O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MARIA D. APARICIO PINEDA,<br><br>          Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security<br>Administration,<br><br>          Defendant. | Case No. CV 10-04598-MLG<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Maria D. Aparicio Pineda ("Plaintiff") seeks review of the Commissioner's final decision denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. For the reasons stated below, the Commissioner's decision is reversed, and this action is remanded for further proceedings.

I. **Factual and Procedural Background**

Plaintiff was born on May 3, 1963. (Administrative Record ("AR") at 25). She has relevant work experience as a machine operator and stock clerk. (AR at 25).

Plaintiff protectively filed an application for DIB on September 8, 2006, alleging that she has been disabled since February 3, 2004, due to arthritis in her back. (AR at 15, 116-20, 137). The Social Security Administration denied Plaintiff's application initially and on reconsideration. (AR at 15, 83-86, 88-92).

An administrative hearing was held before Administrative Law Judge Richard A. Urbin ("the ALJ") on March 18, 2009. (AR at 27-65). Plaintiff, who was represented by counsel, testified at the hearing with the assistance of an interpreter. (AR at 30-57, 59-60). A vocational expert also testified at the hearing. (AR at 57-62). The ALJ issued a decision on March 18, 2009, denying Plaintiff's application. (AR at 30-36). The ALJ found that Plaintiff: (1) has not engaged in substantial gainful activity since her alleged onset date (step 1); (2) suffers from medically determinable impairments that in combination were severe throughout the period under consideration[1] (step 2); (3) does not have any impairments that meet or equal the criteria of a listed impairment (step 3); (4) has a residual functional capacity ("RFC") to lift and carry 10 pounds frequently and 20 pounds occasionally, sit for six hours in an eight-hour workday, and stand and/or walk for six hours in an eight-hour workday; (5) is unable to perform her past relevant work (step 4); but is able to perform other jobs that exist in significant

---

[1] Specifically, the ALJ found the following: (1) from February 3, 2004, through January 2006, Plaintiff had congenital stenosis and degenerative spondylosis of the cervical spine, degenerative changes of the thoracic spine, right carpal tunnel syndrome, headaches, and gastroesophageal reflux disease; (2) beginning on January 1, 2006, Plaintiff had degenerative changes of the lumbosacral spine; (3) beginning on August 11, 2006, Plaintiff had fibromyalgia; (4) beginning in September 2006, Plaintiff had a plantar spur and degenerative changes of the first metatarsal/tarsal joint on the right foot; (5) beginning on December 17, 2007, Plaintiff suffered from depression; and (6) beginning on August 15, 2008, Plaintiff was obese. (AR at 18-19).

numbers in the economy, including the jobs of basket filler, garment bagger, and conveyer belt worker. (AR at 18-19, 25-26). The Appeals Council denied review on April 26, 2010. (AR at 1-4).

Plaintiff commenced this action for judicial review on June 22, 2010. The parties filed a joint statement of disputed issues ("Joint Stipulation) on December 22, 2010. Plaintiff contends that the ALJ failed to give proper consideration to her mental impairment, the opinions of her treating physicians and her subjective symptom testimony. Plaintiff seeks remand for payment of benefits or, in the alternative, remand for further administrative proceedings. (Joint Stipulation at 25). The Commissioner requests that the ALJ's decision be affirmed. (Joint Stipulation at 25).

**II.  Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. *Lingenfelter*, 504 F.3d at 1035 (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts

from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-721.

**III.  DISCUSSION**

    **A.  Plaintiff's Treating Physician's Opinion**

Plaintiff contends that the ALJ improperly rejected the work-related limitations assessed by her treating physician.

The Commissioner is directed to weigh medical opinions based in part on their source, specifically, whether proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Generally, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. *See id.; Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

The Commissioner must also consider whether a medical opinion is supported by clinical findings and is contradicted by other medical evidence of record. The Commissioner may reject the uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. *See Lester*, 81 F.3d at 831. A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. *Lester*, 81 F.3d at 830. If a treating professional's opinion is contradicted by an examining professional's opinion, which is supported by different independent clinical findings, the Commissioner may resolve the conflict

by relying on the latter. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (ALJ may reject opinion of treating physician in favor of examining physician whose opinion rests of independent clinical findings).

### Dr. Urbina

Marvin Urbina, M.D. began treating Plaintiff in May 2006. (AR at 427). He diagnosed Plaintiff with fibromyalgia, depression, migraine headaches, and a history of carpal tunnel syndrome. (AR at 427). In support of his diagnoses, Dr. Urbina cited Plaintiff's chronic fatigue, myalgias, depression, multiple joint pain, and x-rays of Plaintiff's bilateral hands, wrists, and feet. (AR at 427-28). Dr. Urbina also noted that Plaintiff suffered from dyslipidemia, a total hysterectomy, menopause with hormone replacement, migrating pain, and tingling and numbness in the bilateral upper extremities. (AR at 427-28). Dr. Urbina prescribed a number of medications, including Cymbalta (antidepressant), Naproxen (nonsteroidal anti-inflammatory drug), Darvocet (opioid), Soma (muscle relaxant), Neurontin (anti-seizure/pain medication), Fluoxetine (antidepressant), and Celexa (antidepressant). (AR at 183, 365, 431). Dr. Urbina considered Plaintiff's prognosis to be "guarded." (AR at 427).

In October 2006, Dr. Urbina gave an assessment of Plaintiff's ability to perform work-related activities in a "Multiple Impairment Questionnaire." (AR at 427-34). Dr. Urbina opined that Plaintiff could sit four hours in an eight-hour workday and stand or walk four hours in an eight-hour workday. (AR at 429). Dr. Urbina assessed Plaintiff with "moderate" restrictions in the following: using fingers or hands for fine manipulations; using arms for reaching; and grasping, turning, and

twisting objects. (AR at 430-31). Dr. Urbina further found that Plaintiff's pain, fatigue or other symptoms would interfere with her attention and concentration on a frequent basis, Plaintiff was capable of only "low stress" work, Plaintiff would need to take unscheduled breaks lasting 30 to 45 minutes every two to three hours, and Plaintiff would be absent from work about one time each month due to her impairments or treatment. (AR at 432-33). Finally, Dr. Urbina found that when Plaintiff is experiencing acute flares of fibromyagia, she is limited to lifting and carrying no more than five pounds occasionally. (AR at 430).

The ALJ rejected Dr. Urbina's opinion as to Plaintiff's residual functional capacity, but failed to state adequate reasons for doing so. (AR at 23-24). First, the ALJ criticized Dr. Urbina's opinion because he reported that Plaintiff had a history of *bilateral* carpal tunnel syndrome. (AR at 23). The ALJ notes that an electromyogram and nerve conduction study conducted in October 2004 showed there was electrodiagnostic evidence of carpal tunnel syndrome in only the right upper extremity. (AR at 321, 427). However, Dr. Urbina's records contain findings that are consistent with bilateral carpal tunnel syndrome. Dr. Urbina reported that Plaintiff experienced pain in her bilateral wrists and hands and tingling in both upper extremities. (AR at 361, 363, 425, 428). Dr. Urbina also reported that his diagnosis was supported by x-rays of Plaintiff's bilateral hands and wrists. (AR at 428). Thus, to the extent the ALJ questioned the objective basis for Dr. Urbina's opinion, he should have inquired further. *See, e.g., Smolen*, 80 F.3d at 1288.

Next, the ALJ rejected Dr. Urbina's opinion because Plaintiff experienced flares of fibromyalgia only on an intermittent basis. (AR at

24). The medical record showed that Plaintiff experienced acute flares of fibromyalgia in September 2006, February 2007, July 2007, December 2007, and January 2008. (AR at 24). The ALJ assumed that these flares resolved quickly. (AR at 24). However, the infrequency of Plaintiff's acute episodes of fibromyalgia is not a legitimate reason for rejecting Dr. Urbina's opinion. The essential question when dealing with a chronic condition such as fibromyalgia is whether the claimant can perform work tasks on a sustained basis. Here, Dr. Urbina appears to have assessed two tiers of work-related restrictions. First, Dr. Urbina assessed restrictions relating to Plaintiff's general ability to perform work-related tasks. Dr. Urbina found that Plaintiff is able to sit four hours in an eight-hour workday and stand or walk four hours in an eight-hour workday, has moderate restrictions in the use of her fingers, hands, and arms, has frequent problems with attention and concentration, is limited to "low stress" work, needs to take unscheduled breaks every two to three hours, and is likely to be absent from work about one time each month. (AR at 429-33). Second, Dr. Urbina appears to have assessed additional restrictions on Plaintiff during periods when she is suffering from acute flares of fibromyalgia. (AR at 430). Dr. Urbina opined that the acute flares would result in a lifting and carrying restriction to no more than five pounds occasionally. (AR at 430). While the infrequency of Plaintiff's acute flares of fibromyalgia undermines these very restrictive lifting and carrying limitations, it not relevant to the many other general work limitations identified by Dr. Urbina.

The ALJ further criticized Dr. Urbina's opinion because Plaintiff did not receive ongoing treatment with a rheumatologist. (AR at 24). In September 2006, after her initial diagnosis of fibromyalgia, Plaintiff was referred for an evaluation with a rheumatologist, Susan A. Buhay,

7

M.D. (AR at 402). *See Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (explaining that rheumatology is the relevant specialty for fibromyalgia). Dr. Buhay found that Plaintiff displayed signs and symptoms consistent with fibromyalgia, including tender points over the trunk and extremities. (AR at 402). Dr. Buhay requested authorization for Plaintiff to return for a follow up visit, but there is no indication that such authorization was ever granted or that Plaintiff ever saw Dr. Buhay again. Generally, the regulations provide that greater weight be given to opinions of specialists. *See* 20 C.F.R. § 404.1527(d)(5) (more weight is generally given to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist). However, the lack of ongoing treatment from a specialist is not a basis for rejecting Dr. Urbina's treating source opinion. *See* 20 C.F.R. § 404.1513(a) (generally more weight is given to the opinion of a treating source). And, although Plaintiff did not continue seeing Dr. Buhay, she was referred to a pain management specialist who treated her symptoms from fibromyalgia. (AR at 456-64).

Next, the ALJ faulted Dr. Urbina's opinion as unsupported by the objective medical evidence, as Plaintiff's comprehensive physical examination was relatively normal. (AR at 24). In general, an "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *See Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, ... or by objective medical findings"); *see also Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir.

2001). However, the diagnosis and treatment of fibromyalgia is associated with unique evidentiary issues. *See, e.g., Rogers v. Comm'r, Soc. Sec. Admin.*, 486 F.3d 234, 245 (6th Cir. 2007). There are no laboratory tests to confirm the presence or severity of fibromyalgia. *Benecke*, 379 F.3d at 590; *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001); *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). In such cases, a treating doctor's diagnosis may be based purely on a patient's reports of pain and other symptoms. *Benecke*, 379 F.3d at 590; *see also Sarchet*, 78 F.3d 305, 306 (7th Cir. 1996) (noting that fibromyalgia symptoms are "entirely subjective"). Given the difficult nature of diagnosing fibromyalgia, it was improper for the ALJ to reject Dr. Urbina's opinion based on a lack of objective medical evidence. *Benecke*, 379 F.3d at 594; *see also Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (reversing where the "ALJ effectively required 'objective' evidence for a disease [i.e., fibromyalgia] that eludes such measurement").

Finally, the ALJ cited the opinions of the other examining physicians, Ibrahim Yashruti, M.D. and Kambiz Hannani, M.D., to support the rejection of Dr. Urbina's opinion. (AR at 23-24, 334-37, 438-48). Dr. Hannani conducted a complete orthopedic consultation of Plaintiff in February 2007. (AR at 334-37). Other than decreased flexion in the thoracolumbar range of motion, tenderness in the lumbosacral junction, and poor grip strength, all other findings on examination were normal. (AR at 335-37). He diagnosed Plaintiff with low back and cervical dysfunction. (AR at 337). Although Dr. Hannani noted multiple non-physiological findings (including pain and tenderness in a generalized fashion, decreased sensation in the right lower extremity in a generalized fashion, and give away weakness in the bilateral upper and

lower extremities), he concluded that Plaintiff was able to stand and walk six hours in an eight-hour workday, and lift and carry 10 pounds frequently and 20 pounds occasionally. (AR at 337).

Dr. Yashruti conducted an orthopaedic evaluation of Plaintiff in August 2008. (AR at 438-42). Dr. Yashruti reported, "[o]bjectively, there are no abnormal findings." (AR at 442). Plaintiff's neurologic examination was unremarkable, her x-rays revealed some degenerative changes of the thoracic spine, slight osteoporosis in the wrists and hands, and a mild degree of degenerative changes of the mid-foot. (AR at 442). Although Plaintiff had complained of total body pain and appeared noticeably depressed, Dr. Yashruti concluded that Plaintiff was able to sit six hours in an eight-hour workday, stand and walk six hours in an eight-hour workday, and lift and carry 20 pounds frequently and 50 pounds occasionally. (AR at 442-44).

The opinions of the examining doctors did not constitute a proper basis for rejecting Dr. Urbina's treating source opinion. First, neither examining doctor recognized that Plaintiff was suffering from fibromyalgia, a medical condition that the ALJ deemed to be severe. (AR at 18, 23-24). Second, both doctors emphasized the absence of objective evidence to support Plaintiff's subjective complaints. (AR at 23-24). As noted above, however, there are no objective signs or tests to confirm the severity of a claimant's fibromyalgia. *See Benecke*, 379 F.3d at 594 (finding that the ALJ erred by requiring "objective" evidence of fibromyalgia because the disease "eludes such measurement").

Accordingly, the ALJ erred by rejecting Dr. Urbina's opinion without providing adequate reasons for doing so. The decision to deny benefits is not supported by substantial evidence.

## IV. Conclusion

In general, the choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam)). Remand for further administrative proceedings is appropriate "if enhancement of the record would be useful." *Benecke*, 379 F.3d at 593; *see Harman*, 211 F.3d at 1179 (explaining that "the decision whether to remand for further proceedings turns upon the likely utility of such proceedings"). Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, and the record has been fully developed, *Lester*, 81 F.3d at 834; or where remand would unnecessarily delay the receipt of benefits, *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).

Here, remand for further administrative proceedings is warranted, as the medical evidence was incomplete. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2006) ("The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous.") (citing *Tonapetyan*, 242 F.3d at 1150). As discussed above, Dr. Urbina found that when Plaintiff experiences acute flares of fibromyalgia, she is limited to lifting and carrying no more than five pounds. (AR at 430). Dr. Urbina did not, however, assess Plaintiff's general ability to lift and carry. On remand, the ALJ should seek clarification of Dr. Urbina's opinion regarding Plaintiff's

residual functional capacity. If such clarification cannot be obtained, or if otherwise helpful to the proper determination of Plaintiff's disability status, a new consultative examination should be ordered.[2]

Accordingly, the decision of the Commissioner is reversed; and this action is remanded for further proceedings consistent with this Memorandum Opinion.

DATED: January 26, 2011

_____
MARC L. GOLDMAN
United States Magistrate Judge

---

[2] Because the record is not sufficiently developed to support a determination of disability without further proceedings, the Court will not decide whether the remaining issues raised by Plaintiff would independently require reversal. *See Bunnell v. Barnhart*, 336 F.3d 1112, 1115-16 (9th Cir. 2003) (where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate). The Court recommends, however, that the ALJ consider all of Plaintiff's arguments when determining the merits of her case on remand.